**HARTLEY v. COMMISSIONER OF IN-
TERNAL REVENUE.**[*]

**COMMISSIONER OF INTERNAL REVE-
NUE v. HARTLEY.**[*]

**Nos. 9946, 9943.**

Circuit Court of Appeals, Eighth Circuit.

July 6, 1934.

H. C. Fulton and William B. Fryberger, both of Duluth, Minn. (Fryberger, Fulton & Boyle, of Duluth, Minn., on the brief), for Cavour Hartley, executor.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

J. M. Richardson Lyeth and Ben R. Clark, both of New York City, amici curiæ.

Before STONE and GARDNER, Circuit Judges, and JOYCE, District Judge.

STONE, Circuit Judge.

These are cross-appeals from an order of the Board of Tax Appeals which affirmed in part and reversed in part a redetermination (November 22, 1928) by the Commissioner of income taxes due, for the taxable years 1924 and 1925, from the executor of the estate of G. G. Hartley, who died January 11, 1922, possessed of real, personal, and mixed property of approximately $3,000,000.

The appeal (No. 9946) of the executor involves three claimed errors as follows:

I. Use of the value of the estate property at the date of death of Hartley instead of value at time of acquisition of property by him as the basis· of computing for the above tax years the gain or loss on property sold in those years and the allowance of depreciation or depletion of such properties;

[*]Rehearing denied Oct. 17, 1934.

II. Rejection in whole or part of certain salary and expense items claimed as deductions:

III. Rejection of deductions, claimed on account of alleged net loss for the tax year 1923, carried forward into 1924 and 1925.

The appeal of the Commissioner (No. 9943) involves a claimed error in holding that the full amount of salaries and expenses paid in the tax year 1924 was proper deductible expense, thereby rejecting the determination of the Commissioner that a portion thereof should be disallowed as incurred for purposes other than the business of the estate.

## I. Basis of Valuation.

This point is whether in estimating property gains and losses from sales of property and depletion or depreciation of such properties the basic value is that of acquisition cost to the testator or of value at death of the testator. This question is presented without dispute as to facts and is, therefore, purely a question of law. The applicable law is to be found in the acts of Congress, departmental regulations in accordance with such acts, and judicial decisions construing such Acts and such Regulations.

These returns were made under and these taxes are governed by the Revenue Acts of 1921 (42 Stat. 227) and 1924 (43 Stat. 253). Neither of these acts contains any separate provision expressly defining this basis as applied to income of estates of deceased persons in course of administration. Both the 1921 act (section 202 [42 Stat. 229]) and the 1924 act (section 204 [26 USCA § 935 and note]) define, generally, the "Basis for Determining Gain or Loss" from sale or other disposition of property during the tax year, and the act of 1924 (section 204) also defines the basis for "Depletion, and Depreciation." These definitions are under "Part I.—General Provisions" of "Title II.—Income Tax," and, therefore, should be taken as generally applicable to all taxpayers subject to taxation under title 2, unless subsequently qualified in the act. There are no such express qualifications here pertinent. Generally speaking and as far as here material, the basis declared in the above acts is the value (measured by cost or inventory) of acquisition by the taxpayer. It was not until the Revenue Act of 1928 (45 Stat. 791 [26 USCA § 2001 et seq.]) that Congress declared a rule specifically applicable to gains and losses from sales by executors and administrators of property coming from the testator. In section 113 (a) (5), 45 Stat. 818, 819, 26 USCA § 2113 (a) (5),

it is declared "If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent." This provision was effective May 29, 1928, 8 a. m., and was not retroactive. However, there was a provision in section 702 (45 Stat. 879, 26 USCA § 2702), which applied to earlier tax years. Subsection (a) of that section (26 USCA § 2702 (a) provided that where returns of such gains or losses had been made for a prior tax year either on the basis of value at decedent's death or on a basis "in accordance with the regulations in force at the time such return was filed," such used basis should control "unless claim for refund or credit in respect of such basis, or a written election not to come within the provisions of this subsection" be filed by the estate within the limitation for filing claims. Petitioner here has duly filed such written election and is, therefore, not bound by this subsection. Subsection (b), (26 USCA § 2702 (b), declares that where subsection (a) does not govern, the basis for such gain or loss shall be "such basis as is in accordance with the law properly applicable thereto, without regard to any provision of this chapter." The situation resulting from the above state of statutory law and from petitioner's election under section 702 (a) is that there is no applicable statutory expression specifically dealing with the proper basis for estates of decedents.

In promulgating regulations for carrying out the Revenue Act of 1918 (similar to the acts of 1921 and 1924 in the matter involved here), the Department declared that the basis of estimating gains or losses on sales by an executor in calculating income taxes of the estate was the value at death of decedent. This continued the administration rule under similar Regulations as to the acts of 1921, 1924, and 1926 until the decision of the Court of Claims in McKinney v. United States, 62 Ct. Cl. 180, on May 3, 1926, which held that the basis was not value at death of decedent but acquisition value to him. Conforming to this decision, the above regulation was replaced by one making the basis the value of acquisition by decedent. This change remained in effect several months until the decision by the Court of Claims in Nichols v. United States, 64 Ct. Cl. 241, on November 7, 1927. Construing the Nichols Case as overruling the McKinney Case, the Department restored its former regulation and this continued the administrative rule until passage of the Revenue Act of 1928.

The force of these regulations in the matter before us is twofold: First, it settles the purpose of section 702 of the Revenue Act of 1928 to be one of repose for taxpayers (not barred by limitations) who were satisfied with the basis of their returns made in accordance with value at decedent's death or in accordance with regulations existing at the time of return. Secondly, the fact that the regulations in force when the acts of 1921, 1924 and 1926 were, without material change, enacted had for years continuously prescribed date of death as the basis and the first act (that of 1928) enacted after such regulations had been questioned prescribed that basis argue strongly for application of the rule of statutory construction that such undisturbed administrative construction is the one intended by Congress. United States v. Dakota-Montana Oil Co., 288 U. S. 459, 466, 53 S. Ct. 435, 77 L. Ed. 893; Massachusetts Mut. Life Ins. Co. v. United States, 288 U. S. 269, 273, 53 S. Ct. 337, 77 L. Ed. 739; Murphy Oil Co. v. Burnet, 287 U. S. 299, 307, 53 S. Ct. 161, 77 L. Ed. 318; Brewster v. Gage, 280 U. S. 327, 336, 337, 50 S. Ct. 115, 74 L. Ed. 457.

As to the decisions, there is a direct conflict. Those announcing the basis as being value at death of the decedent are Bray, Administratrix, 4 B. T. A. 42; Straight, Executrix, 7 B. T. A. 177; Bankers Trust Co. v. Bowers (D. C. N. Y.) 23 F.(2d) 941. Those announcing the basis as being value or cost of acquisition to decedent are the following in the Court of Claims: McKinney v. United States, 62 Ct. Cl. 180, certiorari denied 273 U. S. 716, 47 S. Ct. 108, 71 L. Ed. 855; Elmhirst v. United States, 38 F.(2d) 915 (same as Straight, Executrix, 7 B. T. A. 177, above); Myers v. United States, 51 F. (2d) 145; and see last paragraph of opinion in McCann v. United States, 48 F.(2d) 446. Able discussions for the former basis are in the Straight and Bankers' Trust Company Cases and the dissenting opinion in the Myers Case; the same as to the latter basis are in the McKinney and Elmhirst Cases. Also, see Bingham v. Long, 249 Mass. 79, 144 N. E. 77, 33 A. L. R. 809.

Expressions in Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457, have been urged by the Commissioner as being a determination of this matter in his favor

here. The executor argues that these expressions are dicta. The expressions intended are as follows (p. 335 of 280 U. S., 50 S. Ct. 115, 117): "The Revenue Act of 1918 and subsequent acts taxed incomes of estates during the period of the administration, including profits on sales of property, and such gains are calculated on value at date of decedent's death.* There appears to be no reason why gains or losses to the estate should be calculated on one basis and those to the residuary legatees on another." That case involved the question of date of acquisition by a residuary legatee of personal property which he had sold in the taxable years involved. The controversy was whether his acquisition for tax purposes was the date of death of the testator or the date of distribution to the legatee. While the question there was different from that here, yet the language above quoted is the expression by the court of one reason for its decision. It is a well considered opinion. This language was not lightly used and it may not be lightly put aside. Though not spoken as to the matter now before us, we would hesitate to regard it other than as on the very edge of controlling authority.

Much has been well said on either side in the above cases and the matter is far from being free from doubt. It seems to us, however, that the predominance is in favor of construing the intent of Congress to be that the basis should be value at death of the decedent.

Since Congress has not expressly spoken on this specific matter in the acts earlier than 1928, we must seek its intent from the more general provisions of the acts—particularly those here involved, of 1921 and 1924. Both acts define an estate of a decedent as a "taxpayer" (42 Stat. 227, § 2; 43 Stat. 253 and 254, § 2 [26 USCA § 1262]); both specifically provide for taxation of the income of an estate during administration (42 Stat. 246, § 219; 43 Stat. 275, § 219 [26 USCA § 960 note]); both include profits from sale of property by the taxpayer in taxable income (42 Stat. 237, § 213; 43 Stat. 256, § 203 [26 USCA § 934]); and each establishes the basis of calculating gain or loss by such sales as the value on March 1, 1913, or the latter date of acquisition (42 Stat. 229, § 202; 43 Stat. 258, § 204 [26 USCA § 935

---

* "Section 219, Revenue Act of 1918, 40 Stat. 1071; Regulations 45, Art. 343.

"Section 219, Revenue Act of 1921, 42 Stat. 246; Regulations 62, Art. 343.

"Section 219, Revenue Act of 1924, 43 Stat. 275 [26 USCA § 960 note]; Regulations 65, Art. 343.

"Section 219, Revenue Act of 1926, 44 Stat. 32 [26 USCA § 960 note]; Regulations 69, Art. 343."

and note]). Also, in the same acts and as part of the general scheme of taxation under each act is a title providing for estate taxes of deceased persons and the "gross estate" for purposes of such taxes is "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated" (42 Stat. 278, § 402; 43 Stat. 304, § 302 [26 USCA § 1094 note]).

From the above statutory provisions, as well as others in these acts, not here particularly referred to, it is clear that the estate of a decedent is made a taxable unity or entity[1] both for estate taxes and for income taxes. Also, it is clear that in estimating income taxes gain or loss from sales during a taxable year are applicable to estates and also that in determining such gain or loss the value at acquisition by the taxpayer is the basis. The executor or administrator is the taxpayer of such an estate. There is no difficulty in applying to him the general statutory requirement, applicable to all individual taxpayers, that the basis shall be value at acquisition by the taxpayer. The time of acquisition by the executor or administrator is the date of his decedent's death. The value at that date conforms to the statutory basis.

The manner of acquisition is not important. The statutes clearly apply this basis to acquisitions of a closely similar character (42 Stat. 229, § 202 (a) (3); 43 Stat. 258, § 204 (a) (5) [26 USCA § 935 and note]). The important consideration is that the statutes establish or recognize certain entities for income taxation purposes—one of these being an estate of a decedent during administration and settlement—and the measure prescribed for determining taxable income arising from gains or losses through sale or other realization upon property by such an entity is confined to such gains or losses accruing to such entity and no other; they are not concerned with what has happened before the property became that of the entity being taxed. Anderson v. Wilson, 289 U. S. 20, 26, 27, 53 S. Ct. 417, 77 L. Ed. 1004; Brewster v. Gage, 280 U. S. 327, 335, 50 S. Ct. 115, 74 L. Ed. 457; Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 516, 517, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Busch v. Commissioner, 50 F.(2d) 800, 802 (C. C. A. 5); McCann v. United States (Ct. Cl.) 48 F.(2d) 446, 448; Abell v. Tait, 30 F.(2d) 54, 55 (C. C. A. 4); Whitcomb v.

Blair, 58 App. D. C. 104, 25 F.(2d) 528, 529; Baltzell v. Mitchell, 3 F.(2d) 428, 431 (C. C. A. 1) certiorari denied 268 U. S. 690, 45 S. Ct. 510, 69 L. Ed. 1159; Bankers' Trust Co. v. Bowers, 295 F. 89, 94 (C. C. A. 2); Nichols v. United States, 64 Ct. Cl. 241, certiorari denied 277 U. S. 584, 48 S. Ct. 432, 72 L. Ed. 999.

If there be doubt as to the meaning of these statutes when all pertinent parts are considered, then another reason for construing the statutes as fixing the basis as being value at death of the decedent is that the basis must be either that or acquisition value to the decedent and that the latter would lead to injustice. The injustice arises from the situation that the "gross estate" prescribed for the estate tax is the value of all property of decedent at the time of death. Such valuation necessarily reflects increases or decreases in value of each property item occurring between time of acquisition by decedent and time of his death—if the value has increased that increase is taxed while if it has decreased that decrease diminishes the gross estate value to the same extent. Thus, such increase or decrease directly affects the amount of estate tax. From this situation, the injustice of making acquisition value to decedent the basis for income taxation of the estate manifests itself in one of two ways (dependent on the movement of value of the property) and results either in double taxation or in escape (partial or entire) from taxation intended by the statutes. The only other basis suggested as possible—the use of value at death of decedent—avoids both of these results and, therefore, should be adopted as the meaning of the statutes since there is nothing in the entire expression in these two income tax statutes forbidding or even inconsistent with its use. This rule that statutes should be construed to prevent hardship or unjust consequences unless the language of the statutes compels a different conclusion is here applicable, is salutary and is firmly established. Burnet v. Guggenheim, 288 U. S. 280, 285, 53 S. Ct. 369, 77 L. Ed. 748; Knowlton v. Moore, 178 U. S. 41, 77, 20 S. Ct. 747, 44 L. Ed. 969; Piper v. Willcuts, 64 F.(2d) 813, 814 (C. C. A. 8); Grier v. Kennan, 64 F.(2d) 605, 607 (C. C. A. 8); Missouri Pac. R. Co. v. Holt, 293 F. 155, 162 (C. C. A. 8) certiorari denied, 264 U. S. 584, 44 S. Ct. 333, 68 L. Ed. 861; Bankers' Trust Co. v. Bowers, 295 F. 89, 96 (C. C. A. 2).

---

[1] Merchants' L. & T. Co. v. Smietanka, 255 U. S. 509, 516, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Reynolds v. Cooper, 64 F.(2d) 644, 647 (C. C. A. 10); Bankers' Trust Co. v. Bowers, 295 F. 89, 94 (C. C. A. 2); Catherwood v. United States, 291 F. 560 (C. C. A. 3).

356

We must conclude that the Board correctly affirmed the action of the Commissioner in taking value at time of death of Hartley as the basis for estimating gain or loss on sales, during these tax years, by the executor of property belonging to the estate. For the same general reasons, estimates of depreciation or depletion of such properties should be upon the same value basis.

## II. Deduction of Salary and Expense Items in 1925.

■ In taxpayer's returns for these years (1924 and 1925), he claimed certain deductions for salaries, for expenses and for accountant's fees. The Commissioner materially reduced each of these items for each year. The Board reversed this determination of the Commissioner as to the items in 1924 (allowing them in full) but sustained the reductions as to 1925. It is of this latter action, the executor here complains.

The estate of Hartley included various securities, fifteen iron mines operated under royalty leases, and several thousand pieces of real estate (consisting of farms and improved city rental properties). In the conduct of this business, decedent maintained a considerable office organization which was supervised by a general office manager who employed assistants, bookkeepers, stenographers, and an engineer who supervised collection of royalties on the iron mines. This organization was continued by the executor and was in operation during 1924 and 1925. The items claimed as deductions for these two years were the salaries and expenses of this organization and certain accountant fees. There was no distribution of the estate until February 24, 1925. On that date there was distribution of all of the personalty (except certain bonds necessary to provide annuities required by the will), the home place and one quarter section of land in Itasca county on which was an iron mine. There was no other distribution of real estate until 1928. After this distribution this organization continued conduct of the distributed properties as if they were still included in the estate. The value of the distributed property was apparently above two thirds of the value of the entire estate.

There is no claim that these expenditures were not proper or necessary. The Commissioner disallowed something more than one-third of the salaries ($6,191.67), one-half the expenses ($1,027.30), and more than two-thirds of the accountant ($1,663.14) items for 1925. His reason as to all was an apportionment between estate and distributed property

service and as to the accountant item the additional reason that some of such service was attributable to administration of the estate and not to the income-producing business of the estate. The Board sustained the Commissioner as to these reductions on the ground that the executor had "failed to overcome the presumptive correctness of the respondent's determination."

The executor is silent here as to the item of accountant's fees. As to salaries and expenses there is no opposition here to an apportionment because of the distribution but the claims are: First, that since the distribution did not occur until after two months (roughly) of 1925 had passed, one-sixth of the salaries and expenses should be allowed in toto; and, second, that the property distributed was of a character (securities and only one mine) requiring little time and effort from the organization while that remaining in the estate (consisting of mines and real estate holdings) require much time and attention. There is an appealing plausibility in this argument but the record here is barren of any facts wherefrom we can say with proper certainty that the Commissioner and the Board both have erred and if so to what extent. We must conclude that the Board was correct in its statement and conclusion as to this matter.

## III. Losses of 1923.

■ In 1923, the estate paid the federal estate tax on this estate. This resulted in a net loss to the estate for that year. This loss the executor seeks to carry forward into 1924 (in the amount of $75,100.60) and 1925 ($52,820.57) under the provisions of section 206 of the act of 1924 (43 Stat. 260 [26 USCA § 937 and note]). The Board sustained rejection of these deductions on two grounds: First, no evidence of loss sustained in 1923; and, second, even if the amount of loss had been established, it could not be carried forward into a subsequent year. The executor contends: First, that a stipulation before the Board withdrew the question of amount of loss and left that to be determined under "Rule 50" and, therefore, only the law question of the propriety of carrying forward a loss was before the Board; and, second, that the statute authorized carrying forward of such loss. We need determine only the second contention.

The executor properly concedes that the statute providing for carrying forward losses applies only to losses resulting from operation of a business by the taxpayer. Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L.

Ed. 389; Ames v. Commissioner, 49 F.(2d) 853, 854 (C. C. A. 8); Refling v. Burnet, 47 F.(2d) 859, 860 (C. C. A. 8). His contention is that the estate was carrying on a business and that the estate tax is an expense and loss of such business because it is a lien upon all the property of the estate and it is only by paying such tax that the estate and its business can be preserved. It may be conceded that this estate was carrying on a business within the meaning of the statute and that the preservation of the estate and of its business required payment of the tax but that does not meet the statutory requirement that the loss must arise from and out of the *operation* of the business (see cases last above cited). An estate tax arises from passage of property from a decedent and is upon the privilege of such transfer. Chase Nat. Bank v. United States, 278 U. S. 327, 334, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Young Men's Christian Ass'n v. Davis, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Schuette v. Bowers, 40 F.(2d) 208, 210 (C. C. A. 2); Frew v. Bowers, 12 F.(2d) 625, 626 (C. C. A. 2). It has no legal connection with the operation of a business and cannot arise from or out of such operation. The contention must be denied. See Ames v. Commissioner, 49 F.(2d) 853, 854, 855 (C. C. A. 8) and Refling v. Burnet, 47 F.(2d) 859, 860, 861 (C. C. A. 8).

### Petition of the Commissioner.

The complaint of the Commissioner here is that the Board erred in rejecting his reduction of the salaries, expenses and accountant's fees claimed as deductions by the taxpayer for the year 1924. In the notice of deficiency the reasons stated by the Commissioner for the disallowance were that a portion of the salaries and expenses was for services on distributed property and a portion of the accountant's fees was for service in connection with the administration of the estate as distinguished from the business of the estate. The Commissioner now takes the position that he contended before the Board that the reductions in salary and expense items should stand because a portion of the services covered thereby were for administration matters as distinguished from the business of the estate. The Board ruled against the salary and expense reductions because there was no distribution of the estate before 1925. As reflected in the deficiencies ordered by the Board, this seems to have been treated as a ruling on accountant's fees also.

As to salaries and expenses, there is no warrant in the record for the contention that the Commissioner urged before the Board the matter of administration service as a ground for the reductions, therefore, we pass that by as not being before us. Obviously, the ground of distributed estate is not sound since there was no distribution of any part of the estate until the following year of 1925.

As to accountant's fees the record is different. The deficiency notice bases the reduction of $1,400.21 (from $2,000.21) "as being administrative work in connection with income tax of decedent and Federal Estate Tax." The Board made no specific finding or statement in its opinion regarding this item. The entire evidence before the Board on this matter was by the accountant, as follows: "The accountant's fees for the years 1924 and 1925, noted in the returns, were for services rendered almost altogether in connection with the current affairs of the estate as accountant and income tax advisor and the amounts are set forth in the sixty day letter accompanying the petition. I was engaged during this period, to a considerable extent, in looking over the tax matters of Mr. Hartley, prior to his death, and the final settlement of those old cases came before the Board of Tax Appeals. I think, largely about 1928, and my services in that connection were paid principally at the conclusion of the contest on those cases." This evidence is rather confusing, but it does clearly state that considerable time was devoted by the accountant to matters concerned with the income tax of the decedent. Obviously, such services are not deductible from the income of the estate because they relate entirely to matters occurring before there was any such estate and are administration charges against the estate. Since this evidence shows there should be a reduction in this respect and since it fails to show that the reduction made by the Commissioner is erroneous, we think the Board erred in denying this reduction.

### Conclusion.

The order of the Board is modified to the extent of reducing the allowable deduction for accountant's fees for 1924 by $1,400.21 and as so modified is affirmed. The cause is remanded to the Board for proceedings in accord with this modification.